EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:03-12555JLT

JAE-PIL LEE AND JUNG-JA LEE,
Plaintiffs

V.

NATIONAL RAILROAD PASSENGER CORP.,
D/B/A AMTRAK, et al.
Defendants

**NOTICE OF TAKING DEPOSITION (RULE 30(b)(6)**

Please take notice that at 10:00 a.m. on March 21, 2005 at the office of Kenneth Halpern & Associates, 233 Needham Street, Newton, MA 02464, the Plaintiffs in the above action by their attorney will take the deposition upon oral examination of the person most knowledgeable for National Railroad Passenger Corp., d/b/a Amtrak. regarding the subjects identified in Schedule A. The Defendant, National Railroad Passenger Corp., is also instructed to produce the documents identified in Schedule B. .

The deposition will be taken pursuant to the Federal Rules of Civil Procedure before a notary public or some other officer authorized by law to administer oaths.

The deposition will continue from day to day until completed. You are invited to attend and cross-examine.

The Plaintiffs,
By their attorney,

Kenneth W. Halpern, Esq.
Kenneth Halpern & Associates
233 Needham Street
Newton, MA 02464
(617) 244-2100

Date: 2/18/05

perations

andards

odate

Service Employees

te Number: 04-04

ate: 02/17/04

ed By: David Nogar

: Pamela Montgomery

ne: ATS 734-2127

1 of 2

ns Standards Updates and Advisories are available on the ntranet.

a registered service mark of the National senger Corporation.

mtrak®

# Initial Terminal Trainlined Door Inspection Procedures

EXHIBIT 4

**Background**

Recently there have been several instances of trainlined doors opening on the opposite side of the train from which they were keyed, creating an extremely dangerous situation for passengers and crew. The following initial terminal inspection procedure has been developed to catch future potential occurrences of such a failure and prevent possible injury or loss of life.

**Policy**

The following Item 4a. is added to Chapter 16 in the *Service Standards for Train Service Employees* on page 16-2:

"4a. Inspection for Proper Operation of Trainlined Doors
*The Conductor, or a member of the train crew designated by the Conductor, will test the continuity and proper operation of trainlined side-entry doors on cars so equipped, by performing the following steps:*

1.) While in position on either end of the consist, key the doors open on the side of the train opposite the platform to be used for boarding at the initial terminal.

2.) Walk through the train verifying that all doors have opened on the activated side, and closed on the platform side.

3.) Key the doors closed, then key doors open on the platform side of the train.

4.) Walk back through the train verifying that doors have opened on the side now activated, and are closed on the opposite side.

5.) Prior to starting the train, the train crew must ensure that all doors are closed prior to departure as required by OSU No. 03-57, dated December 30, 2003."

Any variance from normal trainlined door operation resulting from this inspection should be reported to the proper Mechanical Department personnel at the initial terminal prior to the train's departure.

Where instances are found of unintended door openings during the trainlined door inspection, and the problem cannot be corrected at the initial terminal, trains crews must only key and operate side-entry doors locally, and refrain from any trainlined door operation for the duration of the trip.

At initial terminal locations where train equipment is delivered to the passenger station by a yard or pin-up crew, the aforementioned inspection procedures must be performed by these crews at the primary equipment servicing location rather than at the station, unless otherwise specified by the Division, to avoid delay to the train. In such cases, the yard or pin-up Conductor must communicate to the road Conductor the results of the inspection and the operating condition of the trainlined doors.

When inspecting trainlined door operation on bi-level equipment, such inspections may be made from the ground or station platform.

## SCHEDULE A

1. Concerning the schematics, drawings, sketches and other documents of all doors on Car 43306;
2. Concerning the design and installation, functioning & maintenance of all doors on Car 43306;
3. Concerning any and all maintenance manuals, repair manuals, inspection manuals of all doors on Car 43306
4. Concerning any and all inspection logs, e-mails, microfiche, and other documents for all doors on Car 43306
5. Concerning any and all memorandums, letters, correspondence, instruction manuals and/or material, reports, documents, e-mails discussing and/or reflecting the proper and intended operation of the door and train in the event a door on the train, including a door on Car 43306 as of December 30, 2000, was either open on the non-platform side prior to the train's departure, or was opened while the train was in operation and/or remained open.
6. Concerning memorandums, letters, correspondence, reports, instruction, manuals, and/or material, documents, e-mails, policies and procedures discussing and/or reflecting the policies and procedure of the Defendant in the event a door on train 191 or any similar passenger train was open, or was opened, while the train was in motion and was observed in such a condition by Amtrak personnel.
7. Concerning memorandums, letters, correspondence, reports, documents, e-mails discussing and/or reflecting any interlock devices, braking systems, lights, alarms or other devices intended to either stop the train and/or alert Amtrak personnel in the event a door on Car 43306 was open, or was opened, while the train was in operation on December 30, 2000.
8. Concerning any and all maintenance performed on car 43306 from January 1, 2000 to December 31, 2001.
9. Concerning the December 4, 2000 report (Exhibit 1) that Door "B" of car 43306 was jammed.
10. Concerning any work done or observations made as work was performed on Car 43306 on or about December 6, 2000 per Exhibit 1, and the identity of all people who performed such work.
11. Concerning any and all records, reports, documents, e-mails of inspections of Car 43306 by either Amtrak personnel or any other officials, individuals or entities from January 1, 2000 to December 31, 2001.
12. Concerning any inspections of Car 43306 following the accident involving the Plaintiff on December 30, 2000.
13. Concerning any and all incidents of people jumping or falling from moving trains owned and/or operated by the Defendant from January 1, 1990 to December 31, 2004.

DOCUMENT CONTAINS CONFIDENTIAL INFORMATION. MIS-USE OF INFORMATION OR SECONDARY DISSEMINATION MAY RESULT IN CRIMINAL AND CIVIL PENALTIES

# AMTRAK POLICE DEPARTMENT
## COMPLAINT/WITNESS STATEMENT

15. STATEMENT CONTINUATION: train, someone needs to get off,". At this time the train had already left Rt. 128 station, and I told the woman the the person would have to wait unti Providence station to detrain. The woman appearred to take the news calmly and walked away. I continued to collect tickets, working my way back thru the coach, when I came upon the female passenger who was seated approximately half way back incoach # 82007. There were two woman, one man , and one boy in this group. The man, approximately middle thirty years old, asked me If I could call Route 128 Station. I asked him why, to which he replied that he believed his father-inlaw had jumped from the train. I asked him, "Why would he do that? " The man who identifed himself as the son in law stated that his father -inlaw was in good shape and was a very hyper type of person, and that he believed he had jumped off the train after the train left Rt. 128. I was shown a train door on the left side to coach # 43306 which was one car back of 82007. I observed the door which was partially open and slid it all the way open. I then closed the door and appeared to close and lock properly. I do not know how the door came to be ajar. I was told by the son-inlaw who identified himself as Ed Park .. - that they had attempted to call his father-inlaw on his cellular phone without success. I immediately informed my conductor Larry Soloman of this who learned after making several phone calls that a person had walked into Rt. 128 station who was injuired and was trasnported to the hospital. We arranged for the family members to detrain at Old Saybrook station after they decided they wanted to return to attend to their injured family member who was identifed as Jac Pil Lee. I continued on to New Haven, Ct. where I was met by Amtrak supervisor Platt Ron and Officer Tucker C.. C.B.H.

14. Concerning events that preceded and are related to the creation of the memorandum dated 12/30/03 (Exhibit 2) concerning people the longstanding Timetable Special Instruction providing for protection against passengers attempting to board or exit moving trains while departing stations.
15. Concerning the delay of Train 191 as reported in the attached Incident Report dated December 30, 2000 (Exhibit 3).
16. Concerning the engine and/or train consist of train 191 on December 30, 2000 and the cause(s) of the delayed departure from the Boston station.
17. Concerning any inspections of any cars on the consist of train 191 on December 30, 2000 from January 1, 2000 to December 31, 2001.
18. Concerning any repairs performed on any cars on the consist of Train 191 from January 1, 2000 to December 31, 2001.
19. Concerning the identity of any and all personnel of the Defendant who worked on the repairs for Car 43306 from January 1, 2000 to December 31, 2001.
20. Concerning the identity of personnel of the Defendant who worked on the repairs for any cars of the consist of Train 191 on December 30, 2000 from January 1, 2000 to December 31, 2001.
21. Concerning parts installed to perform any repairs on Car 43306 from January 1, 2000 to December 31, 2001.
22. Concerning parts installed to perform any repairs on Train 191 from January 1, 2000 to December 31, 2001.
23. Concerning the condition of Train 191 as it departed from the Boston station on December 30, 2000.
24. Concerning the document dated December 30, 2003 (Exhibit 2) and the reason(s) for the creation of said document.
25. Concerning any and all incidents of train doors being opened on the non-platform side on any trains owned or operated by the Defendant in the Northeast corridor from January 1, 1990 to December 31, 2003.
26. Concerning events that preceded and are related to the creation of the policy as reflected in the document attached as Exhibit 4 (dated 2/17/04).
27. Concerning the identity of any and all persons involved in the creation of the policy reflecting in the document attached as Exhibit 4.
28. Concerning the policies and procedures of the Defendant for the destruction of documents, including but not limited to inspection reports, incident reports, repair orders, maintenance records, event recorders, delay reports and/or conductor job sheets.
29. Concerning the frequency in which each conductor and/or assistant conductor(s) passed the doors on car 43306 during their ride on December 30, 2000, the frequency in which each conductor and/or assistant conductor in the normal course of the operation of train on which the Plaintiffs were riding on December 30, 2000 would be expected to pass the doors on car 43306, and the responsibilities in

Exh. 3

"DOCUMENT CONTAINS CONFIDENTIAL INFORMATION. MIS-USE OF INFORMATION OR SECONDARY DISSEMINATION MAY RESULT IN CRIMINAL AND CIVIL PENALTIES"

# AMTRAK POLICE DEPARTMENT
## COMPLAINANT/WITNESS STATEMENT

1. INCIDENT NO. 00-26112

2. NATURE OF INVESTIGATION: Passenger Injury

3. FIC/UCR NO.

4. STATEMENT OF: (Last, First, Middle Name) HIGGINS Clifford B.

5. DOB 12/25/48

6. SEX male

7. HOME ADDRESS: 681 State Rd. Unit 11, Plymouth, Ma 02360

8. HOME PHONE 508 224 6984

9. EMPLOYMENT (Occupation and Location): Amtrak Assistant Conductor

10. BUSINESS PHONE

11. LOCATION STATEMENT TAKEN: Amtrak Police New Haven office

12. SOCIAL SECURITY NO. 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

13. NAME OF OFFICER TAKING STATEMENT (If other than block 18, include signature): Clifford W. Tucker Patrolman #368

14. DATE/TIME STARTED 12/30/00, 1000

15. STATEMENT: I Clifford B. Higgins an assistance conductor on train 191, the 30 Dec. 2000,. I reported for my assignment on train 191 at South Station enroute to New Haven, Ct. The train 191 left South station approximately twenty to twenty-five minutes late due to a mechanical malfunction to the train's engine and brakes. We stopped first a Back Bay station and then stopped at Rt. 128 station approximately at 0710hrs this date. At route 128 I was stationed at car #82006 the rear end, engineer's side. From my open door back all other doors were opened on the engineer's side. After a normal station stop, to alow passengers to board, I checked the platform area and observed no moreepassengers, I signaled to Assistance Conductor Al Craven approximately three cars back that it was o'kay to proceed and he signaled Conductor Kendra Jackson and then Conductor Larry Soloman. At this time I was able to observe all the train crew signal to each other that it was o'kay to proceed. I boarded the train and were departed from Rt. 128 station. I observed the train doors shut, someone else having keyed them to shut. I checked to assist any passengers still in the vestibule, and then began to work my way back thru coach # 82007 when I was approached by a female passenger who asked me " could you stop the

16. I HAVE READ THIS STATEMENT GIVEN BY ME OR I HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. I UNDERSTAND THAT MAKING A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES.

C.B. Higgins
Signature of Person Giving Statement

17. DATE/TIME ENDED 12-30-00, 1100hrs

18. Page one of two Pages

OFFICER OBTAINING SIGNATURE IN BLOCK 16: Clifford W. Tucker #368 (Name and Signature)

20. PERSON WITNESSING SIGNATURE IN BLOCK 16: [signature] #240

AMTRAK00091

the event they discovered that one of the doors was open while the train was in operation.

30. Concerning identifying which door on car 43306 (right or left) is the "Door B" identified in Exhibit 1.

31. Concerning any and all design changes made to the door mechanism and/or interlock braking system and/or lights and alarms on the train cars in the series 43306 from January 1, 1990 to the present.

32. Concerning any changes in policy and/or procedure of the Defendant for handling events where a passenger train door becomes open or remains open while a train is in motion from January 1, 1990 to the present.

EXH 2

rations

ndards
ate

ice Employees

mber:03-57

12/30/03

: David Nogar

Pam Montgomery

ATS 734-2127

1 of 1

andards Updates and
ories are available
: Intranet.

tered service mark of the
Passenger Corporation.



# Observation of Platforms While Departing Stations

**Background**

The Northeast Corridor has had a long-standing Timetable Special Instruction providing for the protection against passengers attempting to board or exit moving trains while departing stations. The following provides for similar protection on a system-wide basis.

**Policy**

A new General Rule 6.a. is added to Chapter 10 of the *Service Standards for Train Service* and *On-Board Service Employees* on page 10-2 as follows:

"During the course of the Job Briefing, the Conductor will designate himself/herself or another crew member, to be responsible for being positioned in the rear vestibule of the working portion of the train when departing every station. When the train is ready for departure, the crew will signal to the designated employee that it is clear to proceed, and that employee will take the following action:

***High Level Platforms – Trainlined Doors:***

- Key all doors closed, except the rear working door which they are using.
- On equipment where it is not possible to move the train if any door is open, key all forward and rearward doors closed from his/her location, visually verify from the platform that all doors are properly closed, then close the local door.

***High Level Platforms – Non-Trainlined Doors***

- Visually verify from the platform that all doors are properly closed, except the rear working door which they are using.

***Low Level Platforms – Equipment Using Trap Doors***

- On trains equipped with trap doors and when working low level platforms, the traps should always be in the 'closed' position upon departure, with the designated employee observing the station platform from atop the trap.

***Low Level Platforms – Superliners or Commuter Equipment w/o Trap Doors***

- Ascertain that all forward doors are properly closed from his/her location at the rear working passenger portion of the train, close the local door, then observe the platform from the open window of the closed door.
- On equipment where it is not possible to move the train if any door is open, key all forward and rearward doors closed from his/her location, visually verify from the platform that all doors are properly closed, then close the local door.

After observing that all persons on the station platform are clear of the train, signal to the engineer to proceed. The designated employee stationed in the rear working vestibule will continue to observe the platform from the open door/window until the train has completely cleared the station platform, taking any necessary action to prevent passengers from boarding, exiting or otherwise fouling the moving train.

**Northeast Corridor Operations**

Special Instructions 940-S1 and 940-A1 remain in effect on the Northeast Corridor, and are not affected in any way by the new General Rule 6.a."

**SCHEDULE B**

1. The schematics, drawings, sketches and other documents of all doors on Car 43306 including but not limited to the schematics, drawings, skeptics and other documents regarding the design and installation of all doors on Car 43306;
2. Any and all maintenance manuals, repair manuals, inspection manuals of all doors on Car 43306
3. Any and all inspection logs, e-mails, microfiche and other documents for all doors on Car 43306
4. Any and all memorandums, letters, correspondence, instruction manuals, and/or materials, reports, documents, e-mails discussing and/or reflecting the proper and intended operation of the door and train in the event a door on the train, including a door on Car 43306 as of December 30, 2000, was either open on the non-platform side prior to the train's departure, or was opened while the train was in operation and/or remained open.
5. Any and all memorandums, letters, correspondence, reports, documents, e-mails, policies and procedures discussing and/or reflecting the policies and procedure of the Defendant in the event a door on train 191 or any similar passenger train was open or was opened while the train was in motion and was observed in such a condition by Amtrak personnel.
6. Any and all memorandums, letters, correspondence, reports, documents, e-mails discussing and/or reflecting any interlock devices, braking systems, lights, alarms or other devices intended to either stop the train and/or alert Amtrak personnel in the event a door on Car 43306 was open, or was opened while the train was in operation on December 30, 2000.
7. Any and all maintenance records, reports, documents, e-mails concerning routine, scheduled and/or unscheduled of car 43306 from January 1, 2000 to December 31, 2001.
8. Any and all records, reports documents, e-mails discussing and/or reflecting a report that on December 4, 2000 Door "B" of car 43306 was jammed. (Exhibit 1).
9. Any and all records, reports, documents, e-mails discussing and/or reflecting any and all work done or observations made as work was performed on Car 43306 on or about December 6, 2000, and the identity of all people who performed such work.
10. Any and all records, reports, documents, e-mails of inspections of Car 43306 by either Amtrak personnel or any other officials, individuals or entities from January 1, 2000 to December 31, 2001.
11. Any records, reports, documents, e-mails which discusses any and/or all inspections made of Car 43306 following the accident involving the Plaintiff on December 30, 2000 (whether occurring on December 30, 2000 or at a later date).

EXH. 1

NATIONAL RAILROAD PASSENGER CORPORATION

MAINTENANCE HISTORY FOR UNIT : 43306
(as recorded in OMS- Operations Management Systems )

FOR THE PERIOD OF : 12/1/99 - 1/1/02

| [illegible] | [illegible] | | | | | | |
|---|---|---|---|---|---|---|---|
| 43306 | 10/24/2000 | WAS | OKM | SV | 861 | FUMIGATION - VICANE | |
| 43306 | 10/24/2000 | WAS | OKM | SV | 9999 | EMERG. WINDOW DEPLOYMENT/INSP | |
| 43306 | 12/4/2000 | BSB | BYD | DO | 410 | DOOR - SIDE | DOOR "B" JAMMED NEEDS UNIT |
| 43306 | 12/6/2000 | BSB | OKM | DO | 410 | DOOR - SIDE | |
| 43306 | 12/21/2000 | WAS | BYD | AC | 2020 | FILTER - AIR | |
| 43306 | 12/21/2000 | WAS | BYD | BK | 1988 | SINGLE CAR TEST | |
| 43306 | 12/21/2000 | WAS | BYD | PP | 486 | 60 DAY FOOD SERVICE | |
| 43306 | 12/21/2000 | WAS | BYD | SV | 450 | WATER TANK - FLUSHED | |
| 43306 | 12/21/2000 | WAS | BYD | SV | 861 | FUMIGATION - VICANE | |
| 43306 | 12/21/2000 | WAS | BYD | SV | 9999 | EMERG. WINDOW DEPLOYMENT/INSP | |
| 43306 | 12/28/2000 | WAS | OKM | AC | 2020 | FILTER - AIR | |
| 43306 | 12/28/2000 | WAS | OKM | BK | 1988 | SINGLE CAR TEST | |
| 43306 | 12/28/2000 | WAS | OKM | PP | 486 | 60 DAY FOOD SERVICE | |
| 43306 | 12/28/2000 | WAS | OKM | SV | 450 | WATER TANK - FLUSHED | |
| 43306 | 12/28/2000 | WAS | OKM | SV | 861 | FUMIGATION - VICANE | |
| 43306 | 12/28/2000 | WAS | OKM | SV | 9999 | EMERG. WINDOW DEPLOYMENT/INSP | |
| 43306 | 1/17/2001 | NYS | OKM | AC | 2020 | FILTER - AIR | |
| 43306 | 2/7/2001 | WAS | CPP | TM | 9170 | TRACKING # - REMOVAL, CLEANING, GAPPING S | |
| 43306 | 2/13/2001 | NYS | OKM | AC | 2020 | FILTER - AIR | FILTERS & SPONGES |
| 43306 | 2/21/2001 | NYS | OKM | AC | 2020 | FILTER - AIR | FILTERS & SPONGES |
| 43306 | 2/22/2001 | WAS | BYD | AC | 2020 | FILTER - AIR | |
| 43306 | 2/22/2001 | WAS | BYD | BK | 1988 | SINGLE CAR TEST | |

12. Any and all memorandums, letters, correspondence, reports, documents, e-mails concerning people jumping or falling from moving trains from January 1, 1990 to December 31, 2004.
13. Any and all memorandums, letters, correspondence, reports, documents, e-mails concerning events that preceded and are related to the creation of the memorandum dated December 30, 2003 (Exihibit 2). See Schedule A #14 for language.
14. Any documents reflecting and/or identifying any and all persons involved in the creation of the documents identified as Exhibit 2 and other documents related to people exiting from moving trains.
15. Any and all documents concerning the delay of Train 191 as reported in the attached Incident Report dated December 30, 2000 attached as (Exhibit 3).
16. Any and all reports, documents, e-mails concerning the engine and/or train consist of train 191 on December 30, 2000 and the cause(s) of the delayed departure from the Boston station.
17. Any and all records, reports documents, e-mails concerning any inspections of the cars of the consist of train #191 on December 30, 2000.
18. Any and all records, reports, documents, e-mails concerning any repairs performed on the cars in the consist of train #191 on December 30, 2000 from January 1, 2000 to December 31, 2001.
19. Any and all records, reports, documents, e-mails identifying the personnel of the Defendant who worked on the repairs for Car 43306 from January 1, 2000 to December 31, 2001.
20. Any records, reports, documents, e-mails identifying the personnel of the Defendant who worked on the repairs on the cars in the consist of train #191 on December 30, 2000 from January 1, 2000 to December 31, 2001.
21. Any records, reports, documents, e-mails concerning parts installed to perform any repairs on Car 43306 from January 1, 2000 to December 31, 2001.
22. Any records, reports, documents, e-mails concerning parts installed to perform any repairs on the cars in the consist of train #191 on December 30, 2000 from January 1, 2000 to December 31, 2001.
23. Any records, reports, documents, e-mails concerning the condition of Train 191 as it departed from the Boston station on December 30, 2000.
24. Any and all reports, documents, e-mails concerning the reason(s) for the creation of the document dated December 30, 2003 (Exhibit 2).
25. Any and all records, reports, documents, e-mails concerning any and all incidents of train doors being opened on the non-platform side of trains owned and/or operated by the Defendant operating on the Northeast corridor from January 1, 1990 to December 31, 2003.
26. Any and all records, reports, documents, e-mails, letters, correspondence concerning events that preceded and are related to the creation of the policy as reflected in Exhibit 4. (Dated 2/17/04).
27. Any and all documents reflecting or identifying any and all persons involved in the creation of documents of the policy reflected in Exhibit 4.

28. Any and all records, reports, e-mails, documents concerning the policies and procedures of the Defendant for the destruction of documents, including but not limited to inspection reports, incident reports, repair orders, maintenance records, event recorders, delay reports and/or conductor job sheets.
29. Any and all documents reflecting and/or identifying the frequency in which each conductor and/or assistant conductor(s) passed the doors on car 43306 during their ride on December 30, 2000, the frequency in which each conductor and/or assistant conductor in the normal course of the operation of train on which the Plaintiffs were riding on December 30, 2000 would be expected to pass the doors on car 43306, and the responsibilities in the event they discovered that one of the doors remained open while the train was in operation.
30. Any and all documents reflecting and/or identifying which door on car 43306 (right or left) is the "Door B" identified in Exhibit 1.
31. Any and all documents reflecting and/or identifying any and all design changes made to the door mechanism and/or interlock braking system and/or lights and alarms on the train cars in the series 43306 from January 1, 1990 to the present.
32. Any and all documents reflecting and/or identifying any changes in policy and/or procedure of the Defendant for handling events where a passenger train door becomes open or remains open while a train is in motion from January 1, 1990 to the present.